JUDGE STITES
delivered the opinion of the court:
Marcus Milner died in Fulton county in this state, leaving an estate in land, slaves, &c., which was disjiosed of by his last will between his widow and children.
All of the children, except Louisa, were of a former marriage ; and Louisa died soon after the testator, in infancy, and without issue — leaving her mother and half-brothers and sisters her sole heirs.
This is a contest between the mother of Louisa and the sm> viving children of the testator, as to the mother’s rights under the will, and as heir of her deceased child.
Two questions are made: First. What interest she has under the will; and, second. In what proportions the mother and half-brothers and sisters take the slaves and personalty belonging to the estate of the deceased infant.
*474 The 1st and 9th clauses of the will alone relate to the subject-matter in dispute, and must determine the extent of the widow’s interest as devisee. They are as follows:
“ 1. I give to my wife, Martha, the south .home-quarter, my negro boy Levi, and my woman Terry and children, to use as she thinks best during her lifetime, and then to go to my children; and should there be a surplus above her support, the proceeds to be equally divided among my children. * * *
Ninthly. Should there be a surplus arising from the farm, or tanyard, above the support of my family, I desire my executors to use it to the best advantage for the benefit of my children.”
It is conceded that “ the home-quarter,” and “ the farm,” are the same; and the controversy is in regard to the “ surplus ” mentioned in the first clause — whether the testator intended it as the surplus remaining at the death of the tenant for life, or as the annual surplus to be held by his executors, and used by them for the benefit of his children as it accrued, as indicated by the ninth clause.
Disregarding the latter clause of the will, no doubt could exist as to the meaning of the former. Its language would clearly authorize the view which the court below seems to have taken, and entitle the widow to the surplus whilst she lived— giving to the children only what remained at her death. This construction is, however, in our opinion, not at all allowable in view of the ninth clause of the will, in which the testator clearty indicates a different purpose with regard to such surplus.
Both clauses direct that the surplus shall go to the children. The first is silent as to the character • of surplus — whether annual, or that remaining at the death of the widow — and also as to the time of enjoyment by the children; but, considering the large discretion left the widow, and the estate confei'red upon her, its language would indicate that the testator intended the surplus left at her death. The latter, however, forbids such an interpretation of the previous clause, because it unequivocally indicates a very different intention, both as to the character of surplus, and the time of its enjoyment by the children. *475 It shows that he did not mean the surplus remaining at the death of the widow only, but the surplus as it accrued during her life; and also that his children were to have the benefit of the same, as the executors, in their discretion, might think most advantageous to them, or, as he says, “ to use it to the best advantage.”
Our opinion upon this branch of the case, therefore, is, that the widow was only entitled to so much of the rents and profits of “ the farm,” or “ home-quarter,” as would support herself and family — that is, the family with her at the death of the testator, including herself, the children of the testator living with her, and her servants — and that the court below erred in adjudging to her and her husband beyond that proportion.
The ruling of the court as to the proportions in which the mother and half-brothers and sisters take as heirs of the deceased infant was obviously correct.
By the Revised Statutes, (chap. 30, sec. 11, p. 280,) it is provided that<! where any person shall die intestate as to his personal estate, or any part thereof, the surplus, after payment of funeral expenses, charges of administration, and debts, shall pass and be distributed among the same persons, and in the same, proportions, to whom and in 'which real estate is directed to descend, except as follows: First. The personal estate of an infant shall be distributed as if he had died after full age, &c.”
Section one of the same chapter directs that real estate shall descend — -first, to children and their descendants; if none, then to the father; if none, then to the mother, brothers and sisters, and their descendants, &c.
Section three provides that “ collaterals of the half blood ■shall inherit only half so much as those of the whole blood, or as ascending kindred, when they take with either.”
In this case the collaterals are altogether of the half blood— there are none of the whole blood with whom they can take— and the question is, whether they take as brothers and sisters equally with the mother, as provided in section one, supra.
It is contended that the restriction imposed by the second • section only applies to collaterals of the half blood, where *476 there are collaterals of the whole blood to take with them, and not to a case like the present.
It is difficult to perceive how this position can be maintained in view of the section referred to. It provides not only for cases where there are collaterals of the half and whole blood, but also for such as we are now considering.
It limits the shares of collaterals of the half blood to one half in either case. The language, when properly construed, means nothing more nor less than that they shall inherit only half as much as collaterals when they take with them, and the same proportion when they take with ascending kindred.
In this respect the provision is similar to the 15th section o the act of 1796, (1 Stat. Law, 564,) which declares that “if all be of the half blood, they shall, have whole portions, only giving to the ascendants (if there be any) double portions.”
The mother, in this case, is of the ascending kindred. She is entitled, under the 1st section, to take a share equal to a brother or sister of the whole blood, and the chancellor, very properly gave her a share double that of either of the collat-erals of the half blood.
The judgment is, however, reversed upon the other ground already indicated, and the cause remanded for further proceedings in conformity with this opinion.